IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| DIANA L. TERRY, Personal Representative of the Estate of JACK J. McMILLEN, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) CIVIL ACTION NO:<br>) 1:10-cv-0607 WTL-DML<br>) |
| THE HEALTH AND HOSPITAL CORPORATION OF MARION COUNTY | )<br>)<br>) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, Diana L. Terry, as Personal Representative of the Estate of Jack J. McMillen, by her attorney, for her complaint alleges:

### A.  Jurisdiction, Standing and Venue

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 42 U.S.C. §1983.

2. Diana L. Terry was duly appointed as the personal representative of her father, Jack J. McMillen, on April 6, 2010 by the Madison Superior Court. Jack J. McMillen was a resident at a nursing home in Anderson, Indiana, known as "Edgewater Woods" where the acts or omissions stated herein occurred. A copy of her Letters of Administration is attached hereto as Exhibit 1.

3. Venue in the Southern District of Indiana is proper pursuant to 28 U.S.C. § 1391(b). All claims set forth in this Complaint arose in this District.

### B. Defendant

4. The defendant, The Health and Hospital Corporation of Marion County, is a municipal corporation formed pursuant to Indiana Code 16-22-8-6. It holds a license under Indiana law, I.C. 16-28-2 et seq., to operate a nursing home in Anderson, Indiana, known as "Edgewater Woods."

5. Edgewater Woods is a "skilled nursing facility" as defined by 42 U.S.C. 1395i-3.

6. At all times relevant hereto, Edgewater Woods was acting independently and by and through its authorized agents, servants and employees then and there acting within the scope of their employment, agency or assignment.

7. At all times relevant hereto Edgewater Woods was certified under the Medicare and/or Medicaid programs.

### C. Factual Allegations

(i)

8. Jack J. McMillen, date of birth November 4, 1922, held a diagnosis of tricompartmental osteoarthritis is his right knee in 2005. On August 11, 2005 he underwent a cementless total knee reconstruction and was discharged from the hospital on August 14, 2005 and transferred to the extended care unit to continue with physical therapy, eventually returning home.

9. Mr. McMillen was also diagnosed with Alzheimer's disease which, by the time of a doctor's visit on July 6, 2009 was described as worsening.

10. In 2009 Mr. McMillen had been living at home with his daughter and the assistance of home health care services. On or about August 12, 2009, following a fall, Mr. McMillen was admitted to the hospital because of swelling of his left

leg associated with increased general weakness and confusion. Lab results at the time were consistent with clinical dehydration with some worsening of his renal failure, which was addressed with intravenous fluids. At the hospital he was diagnosed with acute deep vein thrombosis of the left lower extremity, acute (Stage IV) and chronic (Stage III) renal failure with dehydration.

11. At the time of his discharge from the hospital on August 17, 2009, Mr. McMillen was described as resting comfortably, afebrile with stable vital signs, and ambulatory with a walker and tolerating solids. He was admitted to Edgewater Woods after this hospitalization on or about August 17, 2009 for rehabilitation with plans to return home with his daughter.

12. At the time of his admission to Edgewater Woods Mr. McMillen was assessed by staff at Edgewater Woods as being at high risk for pressure wounds and high risk for falls, among other assessments. He was also noted to have healed open area, with scabbing, on his right knee.

13. In its initial care plan, upon Mr. McMillen's admission, the staff of Edgewater Woods identified Mr. McMillen's decreased mobility and defined an approach to reposition Mr. McMillen every two hours with assistance with the goal of maintaining his skin integrity. They also identified his fall risk, defined an approach of providing assistance with mobility and transfers, all with goal of preventing falls. Finally, they noted that Mr. McMillen was unable to ask for assistance and therefore defined an approach of encouraging fluids to avoid dehydration.

14. Following its initial care plan at the time of his admission, Edgewater Woods was obligated by both law and nursing standards of care to undergo a comprehensive assessment, including the use of a tool referred to as the Minimum Data Set ("MDS"). The first such MDS was completed August 28, 2009, with a reference assessment date of August 21, 2009, and therein it was noted that there were no skin problems or lesions present.

15. A subsequent MDS was completed on September 2, 2009. Upon the basis of this MDS certain "Resident Assessment Protocols" ("RAP's") were triggered for certain problem areas, including falls, pressure ulcers, and psychotropic drug use. Pursuant to these triggered RAP's Edgewater Woods was to have developed and implemented a care plan that addressed each of the problems areas identified.

(ii)

16. Mr. McMillen fell at Edgewater Woods on September 26, 2009 while in his room. The fall was unwitnessed and he was found to have suffered an abrasion on the left side of his forehead. He fell again on October 14, 2009, and again the fall was in his room and was unwitnessed.

17. Following the fall on October 14, 2009, Edgewater Woods added an intervention to its care plan to take Mr. McMillen to the common area after he got up from bed. This intervention was not followed by the Edgewater Woods staff. On October 19, 2009, at 1:30 p.m. Mr. McMillen fell again, and again in his room, and again unwitnessed. Nursing staff at that time noted that Mr. McMillen's lethargy increased after that fall on October 19, 2009.

(iii)

18. Despite the identification of Mr. McMillen's risk for pressure ulcers, Edgewater Woods did not develop a care plan to address those issues.

19. On November 3, 2009, Mr. McMillen's clinical record at Edgewater Woods revealed that new pressure sores were noted by a nurse the day before. He was noted to have Stage I sore on his left heel, a Stage I on his right outer foot with several small "intact blisters" on the right instep, a skin tear on his right inner knee, another scabbed area on his right knee area, and one on his left inner knee.

20. On November 6, 2009, at Mr. McMillen's family's insistence, Mr. McMillen was sent to Community Hospital Anderson where he was diagnosed as suffering from "sepsis due to infected cutaneous ulcer on the right knee," among other diagnoses. A skin assessment at the hospital on November 6, 2009 indicated Mr. McMillen's left lateral foot had a "blister with underlying and around redness"; that both heels were "soft and red"; that there was a "dark area on the right heel"; that the left lateral knee "had a pressure area left open to air"; that the right knee had an "unstageable pressure ulcer with minimal, brown drainage" [without] "a non-adherent gauze dressing"; that his sacrum has "redness blanchable"; and that there was erythema to his bilateral buttocks.

(iv)

21. Mr. McMillen's nutritional status started to become compromised soon after the fall on October 19, 2009. From October 21, 2009, to the time of his hospital admission on November 6, 2009, food intake records at Edgewater Woods indicate that Mr. McMillen ate nothing for twenty-one meals, "bites" for five

meals, 50% for seven meals, 25% for three meals, and 100% for only two meals. Bedtime snacks offered to Mr. McMillen were refused most of the time during this period. Mr. McMillen's weight was recorded as 187 pounds on October 1, 2009, but only 168 pounds on November 1, 2009.

22. Despite his rapidly declining nutritional status after October 19, 2009, no additional interventions were taken, nor was Mr. McMillen's doctor notified of the almost 10% weight loss over the course of the previous month.

(v.)

23. Under federal law a physician was required to visit Mr. McMillen every thirty (30) days for the first ninety (90) days of his admission to Edgewater Woods. 42 C.F.R. 483.40. Except for the initial visit, the physician may delegate their responsibility to visit to a physician assistant or nurse practitioner for every other required visit. Edgewater Woods had the responsibility under federal law to ensure that these visits are appropriately made.

24. No physician personally visited Mr. McMillen at Edgewater Woods during the first forty days of his admission to Edgewater Woods.

25. Mr. McMillen's admission to Community Hospital Anderson on November 6, 2009 ended on November 11, 2009 and he was transferred to a different nursing home, Summitville Nursing Home.

26. At the time of his discharge from Community Hospital Anderson on November 11, 2009, Mr. McMillen was diagnosed as having the principal diagnoses of (1) "sepsis due to infected decubitus ulcers of the right knee with cellulites," (2) "acute stage IV, chronic stage III renal failure with dehydration," (3)

"hypotension," and (4) "protein calorie malnutrition." His discharge summary stated that "In the emergency department he was found to have two necrotic decubitus ulcers on the right knee with associated cellulites and sepsis." At the hospital "exposed patellar bone" was noted in the decubitus lesions.

27. At the hospital, an orthopedic specialist and a surgeon advised that the only option for the long term control of the infection that had developed would be an above-knee amputation. Moreover, he would require extensive parenteral nutrition or PEG tube feedings preoperatively if an operation was to be performed. However, based upon Mr. McMillen's advance directives and his condition, his daughter declined the surgical intervention.

28. Mr. McMillen died on November 20, 2009. His death was recorded to be the result of sepsis as a result of right knee infection and M.R.S.A. (Methicillin-resistant Staphylococcus aureus).

(vi.)

29. At all times relevant hereto, the defendant acted by and through its agents, servants, and/or employees, all of which had a duty to ensure that there were a sufficient number of adequately trained, and adequately supervised staff to meet the needs of Mr. McMillen.

30. Defendant breached the duty owed and, as a direct and proximate result of that breach caused damages to the plaintiff as outlined hereinbelow.

D. **Count I: Deprivation of Civil Rights Enforceable via 42 U.S.C. §1983 – Wrongful Death**

31. Plaintiff hereby incorporates by this reference all preceding paragraphs to this Complaint.

32. Defendant is a municipal corporation created by Indiana law and at all times relevant hereto was acting under color of state law.

33. Defendant is bound generally by the 1987 Omnibus Budget Reconciliation Act ("OBRA"), and particularly the Nursing Home Reform Act ("NHRA") contained therein. *See* 42 U.S.C. §1396r; 42 U.S.C. §1396a(w) (as incorporated by 42 U.S.C. §1396r.) Defendant is also bound generally by the regulations that implemented OBRA and the NHRA, found at 42 C.F.R. §483, *et seq.* which serves to define the specific statutory rights found in the authorizing statutes.

34. These statutes and regulations create rights enforceable by plaintiff pursuant to 42 U.S.C. §1983.

35. The defendant, in derogation of the above statutes and regulations, and as a matter of custom and policy, failed to comply with the aforementioned laws as follows:

    a. Failing to provide a sufficient number of adequately trained and adequately supervised staff to meet Mr. McMillen's needs.

    b. Failing to develop and implement policies and procedures to ensure that Mr. McMillen's needs were met.

    c. Failing to care for Mr. McMillen in a manner that promoted and enhanced his quality of life.

    d. Failing to provide and maintain an environment for Mr. McMillen that was free of hazards.

    e. Failing to develop and implement a care plan for Mr. McMillen to prevent the development of decubitus ulcers.

f. Failing to develop and implement a care plan for Mr. McMillen to prevent his unplanned weight loss and malnutrition.

g. Failing to develop and implement a care plan for Mr. McMillen to reduce his risks for falls and/or injury from falls.

h. Failing to provide the necessary care and services to enable Mr. McMillen to attain and maintain his highest practicable level of physical, mental and psychosocial well-being.

i. Failing to ensure that Mr. McMillen received the care of a physician in a prompt and timely fashion.

j. Failing to promptly conduct an assessment of Mr. McMillen's needs after his significant change in condition.

k. Failing to ensure that Mr. McMillen was provided with sufficient nutrition and hydration.

l. Failing to ensure that psychopharmacological drugs were administered properly and properly monitored for adverse side effects and/or effectiveness.

m. Failing to administer the facility in a manner that enabled it to use its resources effectively and efficiently to allow patients or residents to attain and maintain their highest practicable level of physical, mental and psychosocial well-being.

n. Failing to ensure that the administrator and director of nursing properly monitored and supervised staff.

36. As a proximate result of defendant's failures in its duty, plaintiff's decedent contracted an avoidable infection that led to his death.

37. Plaintiff's decedent's daughter, Diana Terry, had a genuine, substantial, and ongoing relationship with her father, Jack McMillen, prior to his death.

38. Plaintiff has suffered and is entitled to recover the following damages, as well as an award of reasonable counsel fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988:

   a. Money and funeral expenses incurred because of the hospitalization and death of the decedent;

   b. Damages for the lost services, assistance, guidance, counseling, companionship and society of the decedent;

   c. Expenses of administration; and

   d. All other losses or damages permitted by law.

WHEREFORE, the plaintiff, Diana Terry, individually and as Personal Representative of the Estate of Jack McMillen, demands compensatory and consequential damages from the defendant in excess of Seventy-Five Thousand Dollars ($75,000.)), plus interest, costs of suit and attorneys fees.

### E.  Count II: Deprivation of Civil Rights Enforceable via 42 U.S.C. §1983 – Survival

39. Plaintiff hereby incorporates by this reference all preceding paragraphs to this Complaint.

40. As a direct and proximate result of the defendant's breach of duties as set forth hereinabove, plaintiff's decedent was injured as previously stated and suffered pain and distress during the remainder of his life.

41. Plaintiff has suffered and is entitled to recover the following damages, as well as an award of reasonable counsel fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988:

    a. Pain and suffering;

    b. Diminution of his length and quality of life;

    c. Hospital, medical, and other expenses; and

    d. All other losses or damages permitted by law.

WHEREFORE, the plaintiff, Diana Terry, individually and as Personal Representative of the Estate of Jack McMillen, demands compensatory and consequential damages from the defendant in excess of Seventy-Five Thousand Dollars ($75,000.)), plus interest, costs of suit and attorneys fees.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

H. Kennard Bennett, Id. Atty. # 4015-49
Attorney At Law
267 W. Berkley Rd.
Indianapolis, IN 46208
(317) 931-0944
ken@hkbennettlaw.com